**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| GULFSTREAM AEROSPACE CORPORATION,  ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. _____ |
| ) | |
| GULFSTREAM UNSINKABLE BOATS, LLC, ) | |
| ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**COMPLAINT**
**INJUNCTIVE RELIEF SOUGHT**

Plaintiff Gulfstream Aerospace Corporation ("Gulfstream") alleges as follows, upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters.

**INTRODUCTION**

Gulfstream owns the famous GULFSTREAM trademark used for its renowned private jets for over 60 years.  The GULFSTREAM brand is synonymous with luxury transportation and the "jet set" lifestyle.  Because Gulfstream's customers commonly own both jets and yachts, Gulfstream directs significant promotional efforts at yacht-focused marketing and trade channels such as boat and yacht shows, boating publications, and co-branded events with yacht companies.

Defendant is a yacht company.  Defendant promotes its yachts as high-end luxury vehicles under the "Gulfstream Yachts," "Gulf Stream Yachts," and/or "Gulfstream

Unsinkable Boats" marks at the same boat and yacht shows, in the same boating publications, and to the same customers as Gulfstream. Unsurprisingly, consumer confusion is occurring.

On October 21, 2019, the Trademark Trial and Appeal Board ("TTAB") of the United States Patent and Trademark Office held that Defendant's "Gulfstream Yachts," "Gulf Stream Yachts," and "Gulfstream Unsinkable Boats" marks are likely to cause confusion with Gulfstream's famous GULFSTREAM mark. That TTAB decision carries preclusive effect in this action. Defendant continues to use its infringing marks, however, in willful violation of federal law.

## NATURE OF THE CASE

1.     This is an action for trademark infringement, false designation of origin, and unfair competition under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.* Gulfstream brings this action seeking equitable relief based on Defendant's unauthorized use of Gulfstream's famous GULFSTREAM mark in connection with the advertising and sale of yachts in violation of Gulfstream's trademark rights in that mark for related products.

## THE PARTIES

2.     Gulfstream is a Georgia corporation with a place of business at 500 Gulfstream Road, Savannah, Georgia 31407.

3. Defendant Gulfstream Unsinkable Boats, LLC ("Defendant") is a Florida limited liability company with a place of business at 5251 W. Tyson Avenue, Tampa, Florida 33611, and a registered agent at 101 E. Kennedy Blvd. #2700, Tampa, Florida 33602.

**JURISDICTION AND VENUE**

4.      This action arises under the Lanham Act, 15 U.S.C. §§ 1051, *et. seq*.  This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b).

5.      This Court has personal jurisdiction over Defendant and venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b) and (c) and Local Rule 1.02(b)(4) and (c), M.D. Fla. Local Rules, because Defendant is located in this district and activity about which Gulfstream complains has occurred and is continuing to occur in this district.

**GULFSTREAM, ITS PRODUCTS AND SERVICES,
AND ITS FAMOUS GULFSTREAM TRADEMARK**

6.      Gulfstream (itself and through its predecessors) has been in the aircraft business under the GULFSTREAM mark for over 60 years.  It has long been one of the leading providers of high-quality aircraft and related products and services to individuals, businesses, government units, and others in the United States and around the world.

7.      Since at least as early as 1959, Gulfstream has continuously used the GULFSTREAM trademark as its flagship brand for aircraft and related products and services.  Gulfstream owns strong, nationwide common-law rights in the GULFSTREAM mark and trade name for such products and services.  The public and the media commonly refer to Gulfstream as simply "Gulfstream."

8.      Gulfstream also owns the following valid and subsisting United States trademark registrations and applications for the GULFSTREAM mark:

| Mark | App./Reg. No.<br>Reg. Date<br>App. Date | First Use in Commerce | Products / Services |
|------|------|------|------|
| **GULFSTREAM** | 1162644<br>July 28, 1981<br>July 16, 1979 | June 23, 1959 | Airplanes |
| **GULFSTREAM** | 4295794<br>February 26, 2013<br>August 22, 2012 | June 23, 1959 | Aircraft manufacturing, repair, refurbishment and maintenance services;<br><br>Flight safety, aircraft maintenance and technical training classes related to aircraft;<br><br>Aircraft inspection services |
| **GULFSTREAM** | 2297843<br>December 7, 1999<br>August 6, 1998 | January 1, 1981 | Caps, cardigans, hats, knit shirts, raincoats, sport shirts, sweaters, T-shirts, visors, wind resistant jackets |
| **GULFSTREAM** | 2313514<br>February 1, 2000<br>August 6, 1998 | January 1, 1981 | Model airplanes, stuffed toy animals |
| **GULFSTREAM** | 2305715<br>January 4, 2000<br>August 6, 1998 | January 1, 1981 | Beverage glassware, coffee cups |
| **GULFSTREAM** | 2297845<br>December 7, 1999<br>August 6, 1998 | January 1, 1981 | Albums for photographs, ball-point pens, guide books in the field of airplanes and aviation, reference books in the field of airplanes and aviation, calendars, greeting cards, note paper, color prints, diaries, lithographs, magazines featuring airplanes and aviation, paper napkins, paintings, pens |

| Mark | App./Reg. No.<br>Reg. Date<br>App. Date | First Use in Commerce | Products / Services |
|---|---|---|---|
| **GULFSTREAM** | 5280654<br>September 5, 2017<br>February 8, 2017 | March 23, 2011 | Downloadable software in the nature of mobile applications for the management, sale, control, design, maintenance, and support of aircraft |
| **GULFSTREAM FAST** | 4373063<br>July 23, 2013<br>September 6, 2011 | October 10, 2011 | Field and airborne support services for private jets, namely, providing information and advice in the field of aircraft maintenance and repair |
| **GULFSTREAM A GENERAL DYNAMICS COMPANY** | 4450312<br>December 17, 2013<br>February 11, 2013 | January 3, 2000 | Aircraft repair, refurbishment and maintenance;<br><br>Custom aircraft manufacturing to the specifications of others |
|  | 88114095<br>September 12, 2018 | | Shirts, jackets, hats |
|  | 88975904<br>September 12, 2018 | | Airplanes<br><br>Aircraft repair and maintenance |

Copies of these registrations are attached as Exhibit 1.

9. Registration Nos. 1162644, 2297843, 2313514, 2305715, 2297845, 4373063, 4450312, and 4295794 are incontestable and constitute conclusive proof of Gulfstream's

ownership of and exclusive rights to use those marks in connection with the products recited in the registrations.  The remaining registrations listed above constitute prima facie evidence of Gulfstream's ownership of and exclusive rights to use those marks in connection with the products and services recited in the registrations.

10.     The GULFSTREAM mark is arbitrary or fanciful, and thus it is inherently distinctive and strong.

11.     Gulfstream has used the trade names GULFSTREAM AEROSPACE CORPORATION, GULFSTREAM AEROSPACE, and other trade names featuring the GULFSTREAM mark since at least as early as the 1970s in connection with its aircraft and related products and services.

12.     Gulfstream's GULFSTREAM jets are available for sale or charter to the general public.  Gulfstream primarily targets its promotional activities at high-net-worth individuals, businesses, and government and military customers.

13.     Gulfstream promotes its GULFSTREAM aircraft and related products and services through a variety of marketing and trade channels, including trade shows and industry events, its own website, third-party websites, social media platforms, print advertising, sponsorships, and film and television placements.

14.     Gulfstream advertises its GULFSTREAM jets in a number of prominent, national publications, such as *Bloomberg*, *Forbes*, *Fortune*, and *The Wall Street Journal*.

15. The GULFSTREAM mark has received further exposure through Gulfstream's high-profile sponsorships and endorsements over the years, *e.g.*, its sponsorship of Team Penske (a leading NASCAR® and INDYCAR® race team) and its spokesperson

arrangement with professional golfer Adam Scott.

16.    Gulfstream regularly attends and exhibits at air shows and other industry trade shows and events as part of its promotional efforts under the GULFSTREAM mark.

17.    Gulfstream owns and operates its official website at www.gulfstream.com, which has been registered and used by Gulfstream in connection with its sale of aircraft and related products and services for over 20 years.

18.    Gulfstream promotes its products and services through dedicated accounts prominently featuring the GULFSTREAM mark on popular social media platforms, with over 500,000 combined followers on Instagram, Facebook, YouTube, and Twitter.

19.    For over ten years, Gulfstream has sold and/or offered for sale a selection of GULFSTREAM-branded clothing and merchandise on its online store at www.gulfstreamstore.com and elsewhere.

20.    Gulfstream operates service and support centers displaying large, prominent GULFSTREAM signage at a number of high-traffic airports, including Savannah, Georgia; Dallas, Texas; Las Vegas, Nevada; Long Beach, California; and West Palm Beach, Florida. Such signage is visible from airport terminals, airplanes, and/or runways.  As a result, on information and belief, millions of air travelers have been exposed over the years to the famous GULFSTREAM mark at airports around the United States and abroad.

21.    Gulfstream also operates mobile aircraft service and support teams under the GULFSTREAM and GULFSTREAM FAST marks based in the San Francisco Bay Area, Seattle, Los Angeles, Houston, Chicago, New York, Washington, D.C., and Savannah, Georgia, as well as in Paris and Nice, France; Athens, Greece; Dubai, United Arab Emirates;

Geneva, Zurich and Basel, Switzerland; Kiev, Ukraine; Valencia, Spain; Bangkok, Thailand; and Hong Kong.

22.     Gulfstream operates sales and design centers under the GULFSTREAM name and mark for customers and potential customers in New York, New York; Savannah, Georgia; Dallas, Texas; Long Beach, California; and London, England.

23.     Gulfstream and its GULFSTREAM products and services have been the subject of widespread, unsolicited media attention and acclaim.  For example, Gulfstream and its GULFSTREAM mark are regularly featured in unsolicited articles in prominent national publications including *The New York Times*, *The Wall Street Journal*, *Forbes*, *Business Insider*, *The Miami Herald*, and *The Washington Post*.  GULFSTREAM aircraft have been referred to in such publications as the "pinnacle of luxury air travel," "the best-selling business jet," "top-of-the-line," "the ultimate corporate chariot," "the Rolls-Royce of the air," and "the flying equivalent of a Ferrari."

24.     Gulfstream's aircraft have been described as pop culture icons in their own right, having been the subject of unsolicited, high-profile attention in popular culture.  For example, popular musical artists such as Drake, Dierks Bentley, Nicki Minaj, The Black Eyed Peas, and Far East Movement have released hit songs referencing Gulfstream's aircraft.

25.     GULFSTREAM jets are owned (and touted on social media and elsewhere) by numerous celebrities, including world-famous actors, athletes, musicians, and others.

26.     GULFSTREAM aircraft have long been featured in hit films and television shows in the U.S., including: *Batman Begins* (film), *Criminal Minds* (television), *NCIS* (television), *Ocean's Twelve* (film), *Pretty Woman* (film), and *Wall Street* (film).

27.    Gulfstream and its GULFSTREAM jets are discussed in non-fiction works like *Britannica Concise Encyclopedia* and the *Guinness World Records*, as well as in best-selling novels such as John Grisham's #1 New York Times Bestseller *The King of Torts*.

28.    Gulfstream and its GULFSTREAM aircraft have received numerous awards over the years.  For example, Gulfstream holds the *Guinness World Record* for "Fastest civil aircraft," and is also featured in the *Guinness World Record* for "Largest single e-commerce transaction."  Since at least 2003, Gulfstream and its aircraft have received a number of annual "Best of the Best" awards from *Robb Report*.  Gulfstream is also a two-time winner (2003 and 2014) of the prestigious Robert J. Collier Trophy, which is awarded annually by the U.S. National Aeronautic Association.  Gulfstream won the "Private Jet Design" award from the International Yacht & Aviation Awards each year from 2017-2019.

29.    Revenues generated from products and services offered, sold, and advertised in connection with the GULFSTREAM mark over the years have been substantial—tens of billions of dollars.

30.    Gulfstream has also expended tens of millions of dollars over the years advertising and promoting its products and services under the GULFSTREAM mark.

31.    Gulfstream owns a large share of the private jet market, and it has been consistently ranked as a leader in brand reputation among business jet manufacturers in third-party rankings.

32. Gulfstream has consistently enforced its rights in the famous GULFSTREAM trademark against confusingly similar third-party marks used for goods and services across diverse industries, including aviation and aerospace, clothing and merchandise, hair styling,

and communications.

33.    On information and belief, Gulfstream owns the only active federal trademark registrations for the mark GULFSTREAM for aircraft or aviation-related products and services.

34.    Gulfstream has established considerable and valuable trademark rights and goodwill in the GULFSTREAM mark.  As a result of Gulfstream's long and extensive use and registration of the GULFSTREAM mark, and the significant sales, promotion, advertising, third-party acclaim, and commercial success under that mark, the GULFSTREAM mark has achieved such widespread public exposure, acclaim, cachet and recognition that it possesses a high degree of distinctiveness and has been well-known and famous in the United States for many years.

35.    The TTAB held that the GULFSTREAM mark was "famous" in *Gulfstream Aerospace Corporation v. Gulfstream Unsinkable Boats, LLC*, Opp. No. 91233257, 2019 WL 5386295 (TTAB Oct. 21, 2019).

36.    On information and belief, the GULFSTREAM mark became famous before Defendant or any predecessor of Defendant adopted or first used the "Gulfstream Yachts," "Gulf Stream Yachts," or "Gulfstream Unsinkable Boats" names and marks or any variation thereof.

37.    GULFSTREAM aircraft are promoted extensively in the yacht industry.  The GULFSTREAM brand is one of the most recognized and sought-after luxury travel and transportation brands.

38.    Gulfstream has promoted its GULFSTREAM jets at more than 15 boat and

yachts shows since 2004, including the Ft. Lauderdale International Boat Show.

39.    Gulfstream has sponsored and/or exhibited its jets at "VIP" events held during boat and yacht shows alongside other luxury product companies including yacht companies. For example, Gulfstream has exhibited its GULFSTREAM jets at the "Wings Wheels Water" event focused on high-end airplanes, cars, and yachts, which is held during the Ft. Lauderdale International Boat Show.

40.    At boat and yacht shows, Gulfstream has held co-branded receptions and events with yacht companies for their overlapping customers.

41.    Gulfstream has placed ads for its GULFSTREAM jets in numerous issues of at least 11 boating publications since 2012.  Gulfstream has also been the subject of prominent unsolicited media attention in boating publications, including *ShowBoats* and *Boat International*.

42.    Gulfstream's own magazine *Nonstop*, which is distributed worldwide in print and online, frequently features editorial content relating to yachts and advertisements placed by yacht companies.

43.    Gulfstream places advertisements for its GULFSTREAM jets that are specifically directed to yacht owners and focused on the complimentary nature of jets and yachts. For example, the advertisement shown below, created with a yacht manufacturer, shows a GULFSTREAM jet flying over a yacht, and states: "Memories that last. Memories. Every day, you collect and add to them. The serenity of yachting along a craggy coast or exploring the waters of that secret anchorage. A remarkable life is a memorable one. This is life elevated. This is Gulfstream."  That ad ran in prestigious luxury-lifestyle publications in

April-August 2016, including *Sotheby's* and *Christie's International*. Gulfstream has placed similarly themed advertisements in the magazines of third-party yacht manufacturers.



44. In sum, Gulfstream routinely promotes its GULFSTREAM aircraft at boat and yacht shows; frequently advertises in boating publications; engages in cobranding and co-marketing activities with yacht companies; organizes and participates in cobranded events at boat shows with yacht companies and other luxury product companies; displays its GULFSTREAM jets alongside third-party yachts and other luxury products at VIP events

during boat shows; places advertisements specifically directed to yacht owners and focused on the complementary nature of jets and yachts in luxury publications; and is featured and lauded in unsolicited editorial content in boating publications.

45.    As a result, the general public and consumers within the luxury travel and transportation industries—and the yacht industry specifically—associate the famous GULFSTREAM trademark exclusively with Gulfstream and its products and services of the highest quality.  Consumers thus expect that "Gulfstream"-branded yachts are sponsored, licensed or authorized by, or affiliated with, Gulfstream.

### DEFENDANT'S INFRINGEMENT OF THE FAMOUS GULFSTREAM MARK

46.    On information and belief, Defendant offers yachts under the "Gulfstream Yachts," "Gulf Stream Yachts," and/or "Gulfstream Unsinkable Boats" names and marks.

47.     On information and belief, Defendant promotes its "Gulfstream"- branded yachts at the same boat and yacht shows at which Gulfstream promotes its GULFSTREAM jets.  For example, Gulfstream's GULFSTREAM jets and Defendant's "Gulfstream"- branded yachts were both promoted at the Ft. Lauderdale International Boat Show held in November 2016.

48.    On information and belief, Defendant has sponsored and/or exhibited its "Gulfstream"- branded yachts at "VIP" events held during boat and yacht shows.  On information and belief, Defendant's yachts were promoted alongside aviation products and services at those events.

49. On information and belief, Defendant promotes its "Gulfstream"- branded yachts in the same boating publications in which Gulfstream's jets are promoted, including

*ShowBoats* and *Boat International*.  For example, Gulfstream's GULFSTREAM jets and Defendant's "Gulfstream"- branded yachts were both promoted in the same November 2016 issue of *ShowBoats* magazine.

50. On information and belief, Defendant promotes its "Gulfstream"- branded yachts to the same customers to whom Gulfstream promotes its GULFSTREAM jets, including high-net-worth individuals, businesses, and government and military customers.  For example, Defendant specifically markets its yachts to high-net-worth individuals for use as the "ultimate yacht tenders" (*i.e.*, yachts used together with even larger yachts, such as superyachts, to take the larger yacht's passengers on excursions, ferry them ashore, *etc*.).

51.   On information and belief, Defendant owns or controls a number of the websites located at domain names featuring the GULFSTREAM mark, including www.gulfstreamyachts.com,         www.gulfstreamunsinkableboats.com,         and www.gulfstreamcocktails.com (collectively, the "Domain Names").  On information and belief, the websites located at the Domain Names prominently display the "Gulfstream Yachts," "Gulf Stream Yachts," and/or "Gulfstream Unsinkable Boats" names and marks.

52.   On information and belief, Defendant's websites located at the Domain Names are accessible throughout the United States, including in this district, and Defendant targets customers throughout the United States, including in this district.

53.   On information and belief, Defendant registered and/or uses the Domain Names in bad faith to further its unlawful activities described herein.  Specifically, the infringing Domain Names connect to websites that promote and sell Defendant's infringing products.

54.     On information and belief, Defendant promotes its products under the "Gulfstream Yachts," "Gulf Stream Yachts," and/or "Gulfstream Unsinkable Boats" names and marks on popular social media platforms, including Facebook (https://www.facebook.com/gulfstreamyachts/), Instagram (https://www.instagram.com/gulfstreamyachts/), and Twitter (https://twitter.com/gulfstreamyacht).

55.     On information and belief, Defendant's yachts are also promoted and sold by third-party dealers, which prominently display Defendant's infringing "Gulfstream-" names and marks on their websites and other materials.

56.     On information and belief, Defendant's yachts prominently display the GULFSTREAM mark on the hull, center console, or elsewhere.

57.     On information and belief, Defendant's signage and other materials used at boat and yacht trade shows prominently display the GULFSTREAM mark.

58.     The "Yachts" and "Unsinkable Boats" portions of Defendant's marks are generic or highly descriptive in relation to Defendant's yachts and boats; "Gulfstream" is thus the dominant portion of the marks.  As such, Defendant's marks are highly similar or virtually identical in appearance, connotation, pronunciation, and overall commercial impression to Gulfstream's GULFSTREAM mark.

59.     On information and belief, actual consumer confusion is occurring among Defendant's potential customers at boat and yacht shows and elsewhere.

60.     A consumer survey commissioned by Gulfstream showed significant levels of consumer confusion caused by Defendant's "Gulfstream Yachts," "Gulf Stream Yachts," and

"Gulfstream Unsinkable Boats" marks.

61.  On information and belief, Defendant was well aware of Gulfstream and its GULFSTREAM brand many years prior to Defendant's adoption and use of its virtually identical "Gulfstream"- marks.

62.  On information and belief, Defendant was also well aware, prior to selecting its infringing "Gulfstream"- marks, that jets and yachts are promoted side-by-side at boat and yacht shows, in boat publications, and elsewhere.

63.    As a result of, *inter alia*, the virtual identity of the parties' marks, the closely related and/or complementary nature of the parties' products and services, the inherent and commercial strength and fame of the GULFSTREAM mark among the general public and within the luxury travel and transportation industries, and the actual confusion in the marketplace, further confusion between Defendant and Gulfstream and their products and services is not only highly and increasingly likely, it is inevitable.

64.  Consumer confusion is highly likely and inevitable at the point of sale, *e.g.*, at boat shows and related events, in the secondary market, and in the charter context.  Actual confusion is already occurring at boat shows.  In the secondary market, sales of preowned "Gulfstream"- branded yachts will not involve Defendant or its sales process. They will simply involve the sale of a luxury vehicle with the GULFSTREAM mark emblazoned on the hull.  The same is true for chartering, as both yachts and jets are commonly available for charter rather than purchase.  Charter customers also will not interact with Defendant or its sales process, and will be confused into believing that they are paying to charter a luxury vehicle that originates with, or is sponsored by or affiliated with, Gulfstream.

65.     Consumer confusion is also highly likely and inevitable post-sale.  Boat owners or potential purchasers who encounter one of Defendant's yachts with the GULFSTREAM mark emblazoned on the hull—at a boat show, marina, or elsewhere—are likely to mistakenly associate Defendant and/or its products with Gulfstream. Yacht owners and potential purchasers are accustomed to encountering Gulfstream's GULFSTREAM mark within the yacht industry (and beyond) and are likely to be confused as to sponsorship or affiliation upon seeing one of Defendant's "Gulfstream"- branded yachts.  Consumer survey evidence confirms that such confusion is already occurring and likely to continue.

66.     Initial-interest confusion is also highly likely and inevitable.  The evidence of actual consumer confusion at boat and yacht shows, and the consumer survey evidence, show that such confusion is already occurring and likely to continue.

67.     Customers, potential customers, and the general public are also likely to be confused to the extent Defendant and/or its products experience any regulatory issues, safety issues, customer services issues, accidents, or other negative events that are publicized by referring to "Gulfstream."   Given the renown of the GULFSTREAM mark among the general public and within the luxury travel and transportation industries, the public is likely to mistakenly associate any such negative events involving a "Gulfstream"-branded yacht with Gulfstream, which will irreparably damage Gulfstream, its reputation, and its goodwill associated with the GULFSTREAM mark.

68.     Gulfstream, through its counsel, sent a letter to Defendant's counsel on January 25, 2017 setting forth Gulfstream's prior trademark rights and requesting that Defendant cease use and attempted registration of its infringing "Gulfstream Yachts," "Gulf Stream

Yachts," and "Gulfstream Unsinkable Boats" names and marks.  Defendant refused.

**THE TTAB DECISION FINDING A LIKELIHOOD OF CONFUSION**

69.    On March 7, 2017, Gulfstream filed trademark opposition proceedings against Defendant's attempted registration of the "Gulfstream Yachts" and "Gulf Stream Yachts" marks, and a cancellation proceeding against Defendant's registration of the "Gulfstream Unsinkable Boats" mark, before the TTAB.  Gulfstream's opposition and cancellation actions against Defendant's marks were based on, *inter alia*, a likelihood of confusion with Gulfstream's famous GULFSTREAM mark.  The TTAB consolidated the opposition and cancellation actions.

70.    On October 21, 2019, after an administrative trial, the TTAB issued its decision ("Decision") finding a likelihood of confusion between Defendant's "Gulfstream Yachts," "Gulf Stream Yachts," and "Gulfstream Unsinkable Boats" marks and Gulfstream's GULFSTREAM mark.  The TTAB thus sustained Gulfstream's oppositions against the "Gulfstream Yachts" and "Gulf Stream Yachts" trademark applications and granted Gulfstream's petition to cancel the "Gulfstream Unsinkable Boats" registration.  A copy of the Decision is attached as Exhibit 2.

71.     In its Decision, the TTAB held, *inter alia*, that Gulfstream's GULFSTREAM mark is "famous" and "conceptually strong"; that the parties' marks are "very similar in appearance, sound, connotation and commercial impression"; that the parties' products are "related"; that the parties' "trade channels and classes of customers overlap"; and that a consumer survey submitted by Gulfstream constituted "legally significant" actual confusion evidence.  The TTAB concluded that, "[i]n view of the fame of [Gulfstream's] mark and its

association with a luxury lifestyle, consumers are likely to believe that Defendant's boats are associated with or sponsored by [Gulfstream]."

72.     In finding a likelihood of confusion, the Decision explicitly relied on evidence of the parties' actual use of their respective marks in the marketplace, including: that the parties' products "are advertised in the same magazines and at the same trade shows and marketed to the same consumer group"; that the parties' products "are linked as a mode of transportation for wealthy consumers"; that Defendant's principal admitted to seeing aircraft companies exhibiting at boat and yacht shows; that third parties offered boats and planes for sale under the same mark; that airplane and boat manufacturers "partnered together to cross-promote each other's products to their overlapping customer bases"; that Gulfstream employs "an extensive licensing program for use of its [GULFSTREAM] mark on a variety of goods"; and that the GULFSTREAM mark is famous based on a variety of marketplace evidence. The TTAB also considered a purported expert report submitted by Defendant relating to "the nature of the yacht market, the yacht buying process, and the degree of care exercised in purchasing the goods." The usages adjudicated by the TTAB in its Decision are thus identical or materially the same as the manner in which the parties use their marks in the marketplace.

73.     Defendant did not appeal or seek reconsideration of the Decision during the relevant timeframe, and the Decision is final.

74.     The valid and final Decision is conclusive in any subsequent action between Gulfstream and Defendant, and Defendant is bound by the preclusive nature of the Decision in this action.

75.     On January 23, 2020, Gulfstream, through its counsel, sent a letter to Defendant's counsel referencing the TTAB Decision and reiterating Gulfstream's request that Defendant cease use of the infringing "Gulfstream Yachts," "Gulf Stream Yachts," and "Gulfstream Unsinkable Boats" names and marks.  On information and belief, Defendant continues to use the infringing names and marks without authorization from Gulfstream and in violation of Gulfstream's rights.

## INJURY TO GULFSTREAM AND THE PUBLIC

76.     Defendant's actions described above have damaged and irreparably injured and, if permitted to continue, will further damage and irreparably injure, Gulfstream, the GULFSTREAM mark, and Gulfstream's hard-earned reputation and goodwill associated with those marks.  Gulfstream has suffered, and will continue to suffer absent injunctive relief, an irreparable loss of control over its reputation and goodwill.  Defendant's actions also substantially damage the public's interest in being free from confusion as to the nature, qualities, source, sponsorship, or affiliation of Defendant's products.

77.     Defendant's use of the "Gulfstream Yachts," "Gulf Stream Yachts," and "Gulfstream Unsinkable Boats" names and marks, and the Domain Names, is likely to cause confusion, mistake, and/or deception as to the source or origin of Defendant's products and commercial activities, and is likely to falsely suggest a sponsorship, affiliation, connection, license, and/or association of Defendant and its products with Gulfstream and/or its products and services.

78.     Defendant (and any predecessors-in-interest) had constructive notice of Gulfstream's nationwide prior rights in the GULFSTREAM mark well before adopting the

infringing "Gulfstream Yachts," "Gulf Stream Yachts," and "Gulfstream Unsinkable Boats" names and marks and registering and/or using the Domain Names.  On information and belief, Defendant (and any predecessors-in-interest) had actual knowledge of Gulfstream's prior rights in its GULFSTREAM mark before adopting the infringing "Gulfstream Yachts," "Gulf Stream Yachts," and "Gulfstream Unsinkable Boats" names and marks and registering and/or using the Domain Names.  Further, Defendant (and any predecessors-in-interest), after being placed on notice of Gulfstream's rights, and after receiving and failing to appeal the TTAB Decision, has continued its use of its unlawful names and marks and the Domain Names.  Defendant has thus acted willfully and with intentional disregard for Gulfstream's rights.

79.    Given that Defendant's infringing names and marks are virtually identical copies of Gulfstream's famous mark, that Gulfstream's aircraft are extremely well-known and sought after within the luxury travel and transportation industries in which Defendant operates, and that Defendant has continued its infringing acts after being put on notice of Gulfstream's claims and the TTAB Decision, this is an exceptional case within the meaning of 15 U.S.C. § 1117.

80.    Gulfstream has no adequate remedy at law that will compensate it fully for the continuing and irreparable harm it will suffer if the wrongful conduct of Defendant is not enjoined.

**FIRST CLAIM FOR RELIEF**
**Trademark Infringement Under Section 32**
**of the Lanham Act, 15 U.S.C. § 1114**

81.    Gulfstream hereby repeats and realleges each and every allegation set forth in

paragraphs 1 through 79 of this Complaint.

82.    Without Gulfstream's consent, Defendant used and continues to use in commerce reproductions, copies, and/or colorable imitations of Gulfstream's registered GULFSTREAM mark in connection with the offering, sale, and advertising of products, which is likely to cause confusion, or to cause mistake, or to deceive, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

83.    On information and belief, at all times relevant to this action, the actions of Defendant described above have been willful.

84.    As a direct and proximate result of the actions of Defendant alleged above, Gulfstream has been irreparably harmed and damaged and will continue to be irreparably harmed and damaged.

**SECOND CLAIM FOR RELIEF**
**False Designation of Origin and Unfair Competition**
**Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)**

85.    Gulfstream repeats and realleges each and every allegation set forth in paragraphs 1 through 79 of this Complaint.

86.    Defendant's actions described above are likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Gulfstream, and as to the nature, characteristics, qualities, origin, sponsorship, or approval of Defendant's products and commercial activities, and thus constitute false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

87.    On information and belief, at all times relevant to this action, the actions of Defendant described above have been willful.

88.     As a direct and proximate result of the actions of Defendant alleged above, Gulfstream has been irreparably harmed and damaged and will continue to be irreparably harmed and damaged.

## PRAYER FOR RELIEF

WHEREFORE, Gulfstream prays that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief including, but not limited to, the following:

A.     An Order declaring that Defendant's use of the "Gulfstream Yachts," "Gulf Stream Yachts," and "Gulfstream Unsinkable Boats" names and marks and the Domain Names infringe Gulfstream's GULFSTREAM mark and trade names, and constitute trademark infringement, false designation of origin, and unfair competition under federal law, as detailed above;

B.     A nationwide injunction permanently enjoining Defendant and its employees, officers, directors, principals, shareholders, subsidiaries, affiliates, agents, related companies, licensees, assigns, successors, and all persons in active concert or participation with any of them:

1.     From using or registering any mark, logo, trade name, domain name, product or service name, social media name or avatar, or other name or identifier that comprises or contains the word GULFSTREAM, GULF STREAM, or any confusingly similar wording or design;

2.     From representing by any means whatsoever, directly or indirectly, that Defendant, any products or services offered by Defendant, or

any activities undertaken by Defendant, are associated, affiliated, or connected in any way with Gulfstream or its products and services; and

3.      From assisting, aiding, or abetting any other person or business entity in engaging or performing any of the activities referred to in subparagraphs B(1) and (2) above;

C.      An Order directing Defendant to immediately destroy or permanently alter all advertising and promotional materials and items, signage, displays, brochures, catalogs, manuals, forms, stationery, web pages, social media pages and accounts, social media names, user names, avatars, images, posters, stickers, newsletters, videos, merchandise, and any other materials and things that bear or display the "Gulfstream Yachts," "Gulf Stream Yachts," or "Gulfstream Unsinkable Boats" names and marks, or any other designs, logos, or marks that comprise or include, or are confusingly similar to, the GULFSTREAM mark;

D.      An Order directing Defendant to transfer to Gulfstream the Domain Names and all other domain names it owns or controls that contain, or are identical or confusingly similar to, the GULFSTREAM mark;

E.      An Order directing Defendant to file with this Court and serve on Gulfstream's attorneys, thirty (30) days after the date of entry of any injunction, a report in writing and under oath setting forth in detail the manner and form in which it has complied with the injunction;

F.      An Order requiring Defendant to account for and pay to Gulfstream any and all profits arising from Defendant's unlawful activities described above, and that such profits be increased in accordance with 15 U.S.C. § 1117 and other applicable laws;

G.     An Order declaring that this is an exceptional case and requiring Defendant to pay Gulfstream's costs and attorneys' fees in an amount as yet undetermined under 15 U.S.C. § 1117 and other applicable laws; and

H.     Such other relief as the Court may deem appropriate.

Dated May 18, 2020                              Respectfully submitted,

                                                  /s/ Frank R. Jakes
                                                FRANK R. JAKES, Esq., FBN 372226
                                                JOHNSON, POPE, BOKOR, RUPPEL & BURNS, LLP
                                                401 E. Kennedy Blvd., Suite 3100
                                                Tampa, FL  33602
                                                Tel:  (813) 225-2500
                                                Email:  frankj@jpfirm.com

                                                and

                                                TERENCE P. ROSS
                                                   TRIAL COUNSEL
                                                MICHAEL R. JUSTUS
                                                KRISTIN D. LOCKHART
                                                KATTEN MUCHIN ROSENMAN LLP
                                                2900 K Street N.W.
                                                North Tower, Suite 200
                                                Washington, D.C.  20007-5118
                                                Phone (202) 625-3500
                                                Fax (202) 298-7570
                                                terence.ross@katten.com
                                                michael.justus@katten.com
                                                kristin.lockhart@katten.com
                                                *pro hac vice applications forthcoming*

                                                *Attorneys for Plaintiff Gulfstream Aerospace Corporation*